District Court in the United States, and I'm here representing Appellant Brittany Morris. In this case, the District Court erred, and this Court should reverse. The sole grounds illustrated in the District Court's order are about the misrepresentation exception to the Federal Tort Claims Act. The Court failed to really analyze the controlling Supreme Court case on that issue, which is Block v. Neal. Block v. Neal is controlling here because we brought a negligence case and a negligent undertaking case, meaning that even where there may not have been a duty for the probation officer to protect my client from the rogue probationer, under Texas law, she incurred that duty. And I'm sorry, I'm hearing a little bit of a feedback, I'm not sure if that's just me.  Okay, I'll keep going. If that's not affecting you, I just want to make sure. Just bear with it. Yeah. Nope. Sorry. Thank you. So the reliance by my client on the fact that the probation officer is going to protect her by getting this probationer arrested is analogous to Block v. Neal because that's where the duty comes from in both this case and in Block v. Neal. There was not a duty to inspect and supervise the house construction in Block v. Neal until it's told to the homeowner, hey, we did this, and there's nothing wrong with it. And so then the homeowner accepts the property and incurs the damage from the defects that the federal agency in that case did not find. Similarly, in this case, the duty for the officer is incurred by saying, I will protect you, you will be safe, I'm going to get him arrested. That creates a duty to protect my client, not just to tell the truth, but to actually do the thing that she promised to do. Similarly, in Block v. Neal, it's a duty to do the thing that they promised to do, to inspect the home, to supervise its construction, and detect the defects, which they failed to do. They failed to do a thorough inspection in Block v. Neal, just like the probation officer failed to diligently act on the information that she had that she could use to protect Brittany Morris from the rogue probationer. And so that is what caused the probationer to stab my client, not the fact that the officer just told my client, although she relied on it, but independently, the fact that the officer didn't get him arrested meant he was free to come stab my client in her home. So the logic in the district court's order is fundamentally opposite to that. The district court decided, well, you said that your client relied on the officer, therefore, you know, poof, your claim is done. That is all misrepresentation. That is not how the misrepresentation exception works if this court is going to stick to its own precedent and to Block v. Neal. It's spelled out not in just Block, but also Truman v. United States, where, I mean, it's in some ways even clearer in Truman because Truman says all you need to show is that, quote, some aspect of the conduct upon which a plaintiff bases a tort claim does not constitute a tort listed in the exceptions. So nothing about letting a rogue probationer roam free, having already assaulted someone, having already violated multiple terms of their probation, and threatened to assault the informant and their ex-girlfriend, but she's an informant against him, which is part of the reason this whole thing is happening. Nothing about any of that is a misrepresentation, okay? Getting stabbed isn't fraud, isn't misrepresentation, isn't, you know, misstating loan values like a lot of these misrepresentation cases are. So it is clear that under Truman, we're talking about something that is not just misrepresentation. And so what you can't do, according to the authority in Truman and Block is, sorry. I don't necessarily disagree with that, because obviously the probation officer, to my mind, had no desire to mislead her about her safety. On the other hand, what about the discretionary function exception? Yeah, so that was not addressed in Judge Trincali's order, and it was only sort of indirectly addressed in the earlier order by Judge Crone. Obviously the United States made the argument below. So the discretionary function exception doesn't apply here for, I would say, three reasons. So the first reason is that part of what the officer promised to do was, you know, this was an experienced probation officer, so I think she was confident, and actually it turned out to be true, that I can get that warrant for you, right? I can promise you, I can guarantee that a warrant's going to issue. Which obviously, not a judge, a probation officer, so she can't guarantee that warrant. Now she knows in her experience that she's confident she can get it quickly, and it turns out that she actually can get it, because when she actually asked for it on Tuesday, she gets it that same day. But she didn't ask for it on Monday, she asked for it on Tuesday, and the night on Monday night is when my client was stabbed. So what the United States has said in this litigation at Record 554 is, well, the officer is making a promise that she doesn't have the authority to make. She's promising to do something that's outside of her authority. Well, that means if it is not in her discretionary authority to even to do this, then it can't be that it's a discretionary function for which the United States is immune. Because they never gave the officer the discretion to guarantee a warrant would issue, or to protect someone on the basis of a guarantee that a warrant would issue. So, if you follow Berkovitz, or I believe it's Sutton against the United States, in both of those cases, they're talking about the limits of where the discretionary function, it needs to be within the scope of discretion that was authorized to that individual, that official in the first place. So that's the first reason. The second reason is the more traditional way around the discretionary function, which is that there is a regulation saying when an officer needs to respond and what to do, which says that they must respond immediately to an indication of a homicidal threat. And that's exactly what the officer had here. She knew this probationer. She knew my client from the previous information. So she believed there was a homicidal threat. That's why she made the promise in the first place, because this guy was not only out of this treatment facility, but he was on PCP, which is widely known to make you dangerous. And he had already attacked her friend and broken into her house. So he's clearly very dangerous, and he's threatening to kill her. So that's, if there's an indication of a homicidal threat under the regulation, we've met that standard. And so— Let me ask you about the discretionary part in a slightly different way. In Block, the Supreme Court refers to what Farmer's FMHA agent was doing as voluntary, as voluntarily taking upon himself or herself to be inspecting, which sounds kind of odd. I would think Farmer's Home agents are supposed to be doing that, but regardless, the Supreme Court said it was voluntary. I don't see that they ever really go where you're going and say that's important, that it therefore takes it out of a discretionary function issue. I don't know if that was raised in Block. I didn't notice it in the opinion, though it may be there. I take it that is vital to your argument, that Ms. Matt had no obligation to be doing what she was doing and getting a warrant? There's, Judge Southwick, there's a lot of components to that question. So I think in Block, there was an issue. So the first question, obviously, in a tort, you need a duty at the beginning of a tort claim. And so one argument in Block was there's a duty to do this inspection because you're helping me buy this home. And the Supreme Court rejected that and said, no, there wasn't a duty to do the inspection, but once you voluntarily did it and told the homeowner about it, you incurred the duty at that point. So it was voluntary in the sense of tort law. The word I didn't remember is gratuitous. They said it was gratuitously assumed. So anyway, voluntary. So that does seem central to Block. But I don't know if they were talking about why was that central to Block in your understanding? Why was that important in Block to say it was gratuitous? Is it because of discretionary function or something else? No, I don't, well, maybe I missed it. I don't think that it was important for discretionary function. I think it was important because that meant that reliance was part of the chain of causation. Because the only way that there was a duty to do the inspection well, the gratuitous or the voluntary inspection well, was because it was relied upon by the homeowner. As opposed to if there had been a private right of action or a ministerial duty to do the inspection, that would have incurred that duty independently of reliance. And so we have brought both a negligence and a negligent undertaking case here. And so they're sort of related duties, I think, that are all under the scope of protecting my client from the rogue probationer. One aspect of that would be the regulation specifically says you need to respond immediately. And one of the ways to respond is to notify local law enforcement, try to get a warrant. But her promise was not constrained to what the regulations required of her. Her promise was more broad, was more, this is going to happen, he will be safe, he will be arrested, I will keep you safe. So that is more than saying, I'm going to go do my job and request the warrant or notify the police, which she didn't do either of those things, but she was saying within the penumbra of everything I can do, I'm going to make sure you're safe. So the reason that I think the discretionary function doesn't apply is the first reason applies to that entire penumbra, which is she's promising to undertake actions which are beyond any discretionary authority. The second reason is more narrow, that there are specific things that she could have done and should have done under the regulations which would have protected Brittany Morris from the rogue probationer.  When you say the regulation, you have a paragraph 47 in the complaint that refers to monograph 109, judiciary policy, et cetera. Is that what you're talking about? MR. GOLDSMITH. Yes, there are several relations.   Are you saying that this creates a duty once it's voluntarily assumed to be pursuing this on the part of Ms. Morris, there then were duties to pursue it in a certain competent way?   With a duty of care, yes. I mean, it's pretty narrow in this situation because as Judge Jones was getting to, it really believed that this guy needed to be arrested and he posed a threat. Now, the regulation is very narrow because when you're not in that universe, then there's all kinds of considerations of, you know, what are we going to do with this guy who's violating. A lot of times, probation officers get a lot of leash to their probationers to see if they can get them to come back on their own. But once they are posing a homicidal threat, the regulation says, respond immediately. Notify local law enforcement. So it's a lot clearer at that point, but, yes, the regulation does impose a specific ministerial obligation to react if there is an ongoing homicidal threat. THE COURT. Well, this is a motion to dismiss, correct?   Correct. Rule 12b-1. I believe, either from our own research or perhaps opposing counsel raised in the brief, that you have cited the wrong regulation and perhaps this duty does not currently exist? That I have to admit some ignorance because the regulations are apparently a secret. So we initially filed the 2010 version of Monograph 109. We also have cited to the current local regulations, which also have that, and I see that I'm out of time. Cited in your complaint. You can answer that. But, but, so, so the Monograph 109 issue, it may or may not be out of date. I don't, I don't know which version of Monograph 109 was there. I think that the local regulation also has the exact same requirement, which we also cited in our briefing. And so for that reason, you know, I, although I don't know for certain which one is applicable, I think the local regulation has the same requirement of responding immediately. So therefore, discretionary function does not apply. Thank you. Thank you. Okay. You have time for rebuttal. We'll hear from Ms. Young. Good morning, Your Honors. May it please the Court. My name is Betty Young, and I'm here on behalf of the United States of America. How more, how Ms. Morris chooses to frame her claim does not control this Court's analysis as to whether or not the misrepresentation exception or the discretionary function exception apply under these circumstances. If it did, any artful pleader could plead around and circumvent Section 2680 of the Federal Tort Claims Act by pleading around an accepted harm. The course of this case is a perfect example of a plaintiff who has made a number of attempts to plead around an accepted harm. First it was the probationer's officer's negligent supervision, and now there is this purported promise. In fact, I'd like to point to a few statements that counsel has made today before this Court. One, that the probation officer stated that, I will protect you. He also made statements, I will keep you safe. Neither of those statements appear in the pleadings that I have seen. What does appear in the pleading and the record before this Court says that Morris, so there are, so this, and I'll just give a little brief history of this case. Initially it started out before pre-suit was an administrative claim which Ms. Morris filed with the government, specifically the U.S. Probation's Office. Excuse me before you go much further, what you said at the beginning that opposing counsel has maybe gone beyond the pleading, it is in paragraph 42 during a phone conversation after burglary, Matt told Morris that Matt would get a warrant immediately, make sure Morris was not in danger, and ensure that Morris was safe to stay in her home. He has somewhat changed the wording, but it seems to me that's the essence of what's in the complaint. Yes, Your Honor. That is, your read of the record is correct, however saying that I will protect you and I will keep you safe are different than what has been pled, and this is to me why I see the district court's decision. But counsel, we aren't dealing with a promise, we're dealing with an officer of the government who undertook to take actions, and then allegedly and obviously negatively performed, and that is what the Tort Claims Act is about. It takes you away from misrepresentation, all of that. It's not just a promise to do it and don't do it. She undertook to do it and did it and negatively performed. I read the cases, that's enough. Yes, Your Honor. I respectfully disagree. I think that first and foremost one of the issues here is that the plaintiff's choice of pleading does not control, and in Life Partners, a Fifth Circuit 2011 case, the court even noted there that although Texas recognizes a voluntary undertaking claim, this argument is foreclosed by the language of the exception, which states that, quote, the provision of this chapter and Section 1346B of this title shall not apply if one of the exceptions applies, regardless of whether or not the claim is valid under state law. In citing United States v. Newstat, the Life Partners noted that as the Supreme Court held in Newstat, whether or not this analysis of whether Ms. Morris, or in this case Ms. Morris, is one for misrepresentation, accords with the law of states which have seen it fit to allow recovery under analogous circumstances, it does not meet the question of whether this claim is outside the scope of the Federal Tort Claims Act, which depends solely upon what Congress meant by the language it used under Section 2688. Did your research refer to a case named Fair v. United States, which is admittedly very old, 234 F. 2nd, 288, 1956? Your Honor, I did not, but I am happy to research that. Well, it's a fairly, well, and again, it may be before the Texas City discretionary function case. It was one where a fellow was discharged from an Air Force hospital and went and shot and killed three people, and the bottom line is that the Fifth Circuit says that there's enough there to, we are dealing with the liability to which the government has newly submitted itself modeled upon the like liability of an employer for the acts of its agents in dealing with third persons. I can be a little more precise, but anyway, the Court reverses and remands for a trial, and it said it's possibly actionable negligence. It is a Tort Claims Act case. Your Honor, unfortunately, I have not read the Fair case. You're perfectly entitled to write us a little post-trial memo about it. I think ultimately, of course, I need to read the Fair case. There's a lot of water under the bridge in the Tort Claims Act since 1956. I think more importantly here before this Court, though, is how the Court sees as the logical point of the plaintiff's claim. Again, it is not how the plaintiff phrases the claim that controls, but the Court's analysis here in applying the misrepresentation exception to determine what is a— Well, what is—I mean, misrepresentation means you're stating something that isn't true. This is true, Your Honor, but— So why—what's the misrepresentation here as opposed to a statement of intent? Well, there are various statements that the—Ms. Morris alleges that the probation officer made, and here, the misrepresentation exception isn't just a misstatement. A misrepresentation exception also applies within this circuit to the failure to use due care to communicate information. Arguably, here, what has been alleged by Ms. Morris is that the probation officer was going to go obtain a warrant for Malvo's arrest, that she was safe, that she didn't have to do anything, that she didn't have to go anywhere, and taking those allegations, even taking those allegations as true, this district court found—or the district court in this case, upon a motion to dismiss, found that that was a failure to use due care because, for example, the initial statement that she was safe, that is clearly a false statement because, ultimately, Malvo came to her house and attacked her, so she was not safe. That's a misstatement. The other—the failure to use due care also arises from this probation officer's communication that she was going to go obtain a warrant. Well, what does that mean? She—does that mean that she actually has the authority to obtain the warrant? No. She files a petition with the court. The court then evaluates it and then makes a ruling on that, and I think, arguably, that—just saying that I'm going to go obtain a warrant— That's not a misrepresentation when you have a fellow who's already committed burglary and battery and threatening and so on. So going and saying—and, Your Honor, you're right in that saying that I'm going to go and obtain a warrant isn't false because, technically, she did go and petition the court, but I think it's important to review the factual timeline of this case, right? The burglary—the petition to—for the arrest warrant for Mr. Malvo, this federal probationer, was applied the day after the initial report by Ms. Morris that this probationer was in violation of a condition of his release because he left the residential reentry facility, and following that, the next day, the next day, the probation officer filed that petition. Then, according to Ms. Morris' pleadings, there were subsequent outreach by Ms. Morris calling Officer Matt to inform of the burglary, which occurred on August 2nd—I'm sorry, August 4th. That's already two—that's two days after the petition was originally filed by this probation officer. Well, what do you do with the language of our decision at Barron that if the conduct is discretionary in nature and of the kind that the discretionary exception was designed to shield? Your Honor, could you rephrase that question? My question was how do you respond to the basic holding of our court that the discretionary exception, which we're talking about here, whether she had discretion to do it, not to be taken out of the Tort Claims Act, if the conduct is discretionary in nature, but it was—and if the kind that the discretionary exception was designed to shield? I don't think you maintain that here, that what she was engaging in was the conduct that was designed to be shielded from her. I think the bigger picture here on the discretionary function exception and why it could also apply in this case is because what Ms. Morris is complaining about is how this probation officer responded when she received additional reports from Ms. Morris that this malveau had burglarized her home, attacked her friends, stole her iPhone, and also, you know, alleges that she also called the police department, the local law enforcement, so the Port Arthur police and Beaumont police department were called as well. Here, like, this bigger picture of how the probation officer responded is entirely discretionary. She—you know, although we're not there because this was on a motion to dismiss, but, like, the nature of her job in supervising requires balancing various considerations. It may be—yes, it may be discretionary if she did nothing, perhaps, but the difficulty is that in the Federal Tort Claims Act, you walk away from that when she undertakes herself and what she did affirmatively and then doesn't—and egregiously doesn't perform with the fact that she had—she just failed to find any protection to do anything, so that's the difficulty I'm having with the argument. Yeah. Excuse my voice. I recognize that, Your Honor, and I'd like to make two points about that. First, I would like to direct the Court to Wysick v. United States. It's a sister court case. It's in the Ninth District, and it's from 1993, but factually speaking— A ninth—a sister court from the Ninth Circuit? A Ninth Circuit case. Oh, okay. Let's see. See what— And the reason why I want to direct the Court to that case is because it is factually, factually similar in that the plaintiff in Wysick asserted negligent supervision by the U.S. Probation Officer on two—one was negligent supervision of the probationer who ultimately shot a prosecutor while he was out on probation, but also the negligent for failing to warn the particular plaintiff that this probationer was out and could pose a harm to the prosecutor. And in this court before the Ninth Circuit, they articulated—this court articulated the discretionary nature of supervising federal probationers, as well as identify—like, in saying that the guidelines that are provided, which counsel referenced earlier as regulations, the Judiciary Guide—the Guide to Judiciary Policy, those are guidelines that set out the dual obligations of a probation officer and provides them with options on how to respond. The appropriate— Counsel, let me ask you about that. It's mentioned at least twice in the complaint. I referred to it earlier, Paragraph 47. Paragraph 50 also says that they had a—that Ms. Matt had to express ministerial duty, immediately obtain a warrant if necessary under this policy. We haven't looked at the policies referenced in the complaint, so I think we can. And is there—is that available to us? And second, do you state this is not the relevant policy? I know you're saying it's discretionary and whatever else. I'm not trying to get in the way of that argument, but I'm just talking about the document itself and what it says. Is it in the record, and is it the right, relevant, timeframe policy? Yes. Great question, Your Honor. So— Well, thank you. The judicial—the guide to judiciary policy that the plaintiff initially referenced dating to 2010 is—was not the policy in effect at the relevant time when Malveaux attacked Ms. Morris. The relevant policy, the guide to judiciary policy, Volume 8, had a second version, a 2018 version, that replaced the 2010, and that policy is—is available to this Court. It is also included as part of the record. I think that this Court can also take judicial notice of this particular Volume 8. But you're saying that it—discretion would still apply even if we look at this policy, which is the representation, I would say, in the complaint, that it says once you get to a certain point, and we were at that point with Ms. Morris and Ms. Matt, is the allegation, there was no longer discretion, the threat was real, I don't know what the policy language is, and Ms. Matt was obligated to get—to quickly, immediately pursue the acquisition of a warrant. Is that what the policy says? No, Your Honor. No, my review of the guide to judiciary policy, Volume 8, the 2018 version, does not have an immediacy requirement. In fact, the— If it did, would it be binding? You're talking about policy. I'm trying to get—when is this no longer discretionary? Whatever the obligation is. Are you at least acknowledging—I'm not trying to trick you here—are you at least has certain information, there's no discretion, this then has to be done? I think that's a very tricky question because it's hard to draw a bright line on things, but I think ultimately the nature of the conduct is what's relevant when we're looking to the discretionary function exception and whether it applies, and the nature of the conduct of supervising a federal probationer is largely discretionary, and under these circumstances, Ms. Morris has not pointed to anywhere that there's this mandatory duty to immediately obtain an arrest warrant. I've not seen that, and it's also not included in the Eastern District of Texas' post-conviction supervision manual, which is the local manual that's based on the guide to judiciary policy. So you're saying sort of that the probation officer could not have been reprimanded or sanctioned in any way for having failed to go immediately for a warrant? Well, Your Honor— I mean, it seems to me that it's about as clear-cut of a concrete, immediate threat as one could perceive, and a probation officer's post-discretion, I mean, regardless of discretion, that should be obvious to the probation officer. Better to arrest the guy, you know, prophylactically even if he gets let out too fast than to let him roam around. Yeah, and ultimately, whether there was an abuse of discretion in going back to the court and providing additional information to expedite the court's consideration of the petition— But you walk away from the discretion when you undertake that. Whatever discretion she had not to act, she acted about—or she did, and she walked by—no, she took action, all right, she left her room, but anyway— Yeah, I think that the undertaking here is that she went to go do something that was already part of her duties as a probation officer to supervise this federal probationer, which is distinct from, for example, the undertaking that we saw in Block v. Neal, where the agency didn't actually have an obligation to go and inspect the construction of this home, but instead exercised a right to do that. And so therefore, in Neal v. Block— What do you say to the suggestion that as a probation officer, she has certain basic obligations with regard to her charge that the person who did the bad deed here, she's superintending him, and she gives information that this guy is posing a threat to—she'd be deadly, and then she doesn't do anything about it. That's the core of much of the relationship between the probation officers. They're enormously important to the sentencing system. Yes, and I understand that. I think, Your Honor, and I see that my time is running out here, but just to answer your  I'm sorry, yes. Like, this probation officer did respond by filing the petition. Ultimately, and I see, Your Honor, my time has run out, but, you know, tragedy happens, but this should not be a reason to hold the United States liable for an accepted harm that Congress likely never intended to waive. Tragedy happens. What if she had done—all she had to do was to do her job, and tragedy would not have happened. I mean, it's not just this abstraction. Those things happen. That's why you have a Tort Claims Act. I think it's—thank you, Your Honor. Thank you. All right. Thank you, ma'am. Mr. Hensley. Are you aware of any other cases—I mean, I can understand the government's considerable disquiet about probation officers leading to liability with all the harm that those on probation cause, and somehow making the probation office in the United States liable for them. Are there other cases like this? Uh, yes. Not in the exact same stage of probation, but we cited to Whitaker, which is a district court decision out of the D.C. Circuit. A probation officer was found to have acted in some way which created liability for the federal government? Yes. So it was that they had alleged that they were aware of a threat but failed to manage the threat, and that led to injuries. So— Um, I think that, um, Pavalo, which is also in D.C., when cited in our briefing, is a—it's pretrial services. So, again, not the exact same department, but similar concepts. The, um, my friend on the other side argued about WISEC, which is out of the Ninth Circuit. I—we did discuss that briefly in our briefing, but, um, the distinction there is that the government did not—the prosecutor did not believe there was a threat. They disagreed with, like, the assessment. And so at that stage, I think there's a better argument for discretion. If, um, if Officer Matt had gotten these calls and said, like, oh, I don't trust you, you know, you're just a girlfriend. But Officer Matt didn't disbelieve her. She actually knew her from before this in getting him arrested in the first place and and had collateral information. So—so she did believe her. She did try to arrest him. She just didn't do it diligently enough. So WISEC is not comparable. I also—Judge Higginbotham brought up our third reason that I think the discretionary function shouldn't apply here, which is that under this Court's precedent, the discretionary function only applies for actions that are fraught with policy considerations. So it has been rejected in investigations. It's been rejected in teaching someone how to fly a plane. It's been rejected in medical care contexts. Like, those are all discretion. They involve judgment. But it's about policy judgment. And it's not a policy judgment of, hey, I think this guy's an immediate threat, but I'm going to put it off until tomorrow to do anything about it. That's just managing an operational task. And so that does not fall under the ambit of the discretionary function, which is supposed to protect policymaking or the things that are related to policymaking. Where are you if we look at these, what you've cited as policy guidelines, and we find it doesn't create the obligation that you say? Where—where does that leave you? That would undermine my—my second—my second of three reasons why the discretionary function doesn't apply. And—and I guess to a little bit better address maybe what I should have said more clearly in my initial argument, is that the—the government disputes my citation to monograph 109 because I don't have the current monograph 109. I got it off the internet, and it was 2010 version. But what we do have is the overview document from the local probation department, which is also a regulation, which also says that the probation officers must respond immediately to any indication that the individual may be suicidal or homicidal. And that's in the record at 1700. I—I also think it's in 1781. And—and to me, those—those local documents look like they are derived from the 2010 monograph 109, which is at 1599 and 1600. Well, to make this fit with Block, it seems to me what you're talking about now is—is sort of irrelevant. It helps your case if it says strongly enough what you're saying. But—but your—one of your arguments, at least, is that there was a voluntary assumption of this protection of Ms. Madden responding to it and talking to the police and whatever else. And it seems to me—it seems to me you're saying that is enough in itself, without this policy obligation upon Ms. Madden as an employee of the probation office. Yes. In this case, because the—the promise, the duty she undertakes is—is not—is—she doesn't say, I'm just going to do my best to exercise my discretion and protect you under the policies as I'm allowed to do. She—she says, I'm going to keep you safe. I'm going to get him arrested right away. And I—I see that I'm out of time. But yes, I—I do agree that the—under the narrow circumstances of this case, that we don't even need to get into the regulations in order to proceed. Let me ask, is Ms. Morris able to talk at this point? Yes, she's—she's paralyzed, but she is able to talk. Well, I was just wondering, because a lot of this may turn on exactly what the probation officer said to her. So you'd have to have a client who could describe that. Yes, and we have her declaration in the record, because below, they challenge some of the  So that's at—well, I believe that's at 1750. All right. Thank you, sir. Court will stand in recess.